UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEANA LEVEQUE,

        Plaintiff,                    CIVIL ACTION NO. 13-10685

    v.                              DISTRICT JUDGE ROBERT H. CLELAND

                                  MAGISTRATE JUDGE MARK A. RANDON

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 9, 12)**

Plaintiff Jeana Leveque challenges the Commissioner of Social Security's ("the Commissioner") final denial of her benefits application. Cross motions for summary judgment are pending (Dkt. Nos. 9, 12). Judge Robert H. Cleland referred the motions to this Magistrate Judge for a Report and Recommendation (Dkt. No. 3).

**I.**      **RECOMMENDATION**

Because the Administrative Law Judge ("ALJ") did not err in evaluating Plaintiff's subjective complaints of disabling symptoms, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

**II.**      **DISCUSSION**

      **A.**  *Framework for Disability Determinations*

Under the Social Security Act (the "Act"), Disability Insurance Benefits and Supplemental Security Income are available only for those who have a "disability." *See Colvin v.*

*Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of HHS*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B.  *Standard of Review*

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited such that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses") (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted); *see also Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted) (explaining that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion"); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of HHS*, 974 F.2d 680, 683 (6th

Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (internal quotation marks omitted). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant").

### III. REPORT

#### A. Administrative Proceedings

Plaintiff applied for disability insurance benefits on November 24, 2009, alleging a disability onset date of July 13, 2009; the Commissioner denied the application (Tr. 18). Plaintiff appeared with counsel for a hearing before ALJ Peter N. Dowd, who considered the case *de novo* (*Id.*). In a written decision, ALJ Dowd found Plaintiff was not disabled (Tr. 15-29). Plaintiff requested an Appeals Council review (Tr. 12-14). On November 1, 2012, the ALJ's findings became the Commissioner's final administrative decision when the Appeals Council declined further review (Tr. 1-4).

#### B. ALJ Findings

Plaintiff was 33 years old on her alleged onset date (Tr. 24). She has a high school education and past relevant work as a cabinet company production worker and auto parts assembler (*Id.*). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at

step one that she had not engaged in substantial gainful activity since her alleged disability onset date in 2009 (Tr. 20).

At step two, the ALJ found that Plaintiff had the following "severe" impairments: degenerative disc disease[1] of the lumbar spine and cervicalgia[2] and/or degenerative disc disease of the cervical spine (Tr. 21).

At step three, the ALJ found no evidence that Plaintiff's impairments met or medically equaled one of the listings in the regulations (Tr. 22).

Between steps three and four, the ALJ found Plaintiff had the Residual Functional Capacity ("RFC") to perform:

> A range of sedentary exertional work activities[3] . . . . [Plaintiff] needs an at will option to sit or stand. [Plaintiff] can only occasionally climb stairs, balance items while standing and walking, stoop, kneel, crouch and crawl.

(Tr. 22).[4]

---

[1] "Degenerative disc disease is not really a disease but a term used to describe the normal changes of the discs in the spine as a person ages. The breakdown of the discs can result in back or neck pain, as well as osteoarthritis, herniated disc, or spinal stenosis." *See* http://www.webmd.com/hw-popup/degenerative-disc-disease (last accessed December 14, 2013).

[2] Cervicalgia is neck pain: "discomfort in any of the structures in the neck. These include the muscles, nerves, bones (vertebrae), and the disks between the bones." *See* http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0003516/ (last accessed December 14, 2013).

[3] Sedentary work involves:

lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

[4] DDS made a prior determination that Plaintiff was capable of light work (Tr. 40).

At step four, the ALJ found that Plaintiff could not perform any of her past relevant work (Tr. 23).

At step five, the ALJ found Plaintiff was not disabled, because he could perform a significant number of jobs in the national economy (Tr. 25).

### C.  Administrative Record

#### 1.  **Plaintiff's Hearing Testimony and Statements**[5]

Plaintiff last worked at Pioneer Cabinetry; the work required a lot of standing, walking, lifting, and inspecting and wrapping of cabinets (Tr. 43-45). Plaintiff stopped working at Pioneer Cabinetry on July 13, 2009 because she hurt her back; she has not worked since, but did receive a $65,000 settlement related to her worker's compensation claim (Tr. 45-47).

Plaintiff has lower back pain caused by degenerative disc disease of the lumbar spine (Tr. 48). She also has problems with her neck, which might be related to a pinched nerve (*Id.*). Plaintiff's pain began about 18 months before her hearing date (*Id.*). Dr. Shaw is Plaintiff's neurologist (Tr. 49). He and Dr. Gupta, her family physician, told Plaintiff that she will have to deal with her back and neck problems for the rest of her life; they will only get worse as she ages, and eventually, she will undoubtedly require surgery (*Id.*).

Plaintiff takes Lortab four times daily for pain and received injections in her neck in March and April of 2010; she experienced a ninety percent improvement, but began having headaches approximately two months later (Tr. 49-50, 54). She has not had injections since because she has been without health insurance for six months (Tr. 54). Plaintiff's back condition

---

[5] Plaintiff's testimony before the ALJ reflects his subjective view of his medical condition, abilities, and limitations; it is not a factual finding of the ALJ or this Magistrate Judge.

also causes symptoms of anxiety and depression (Tr. 54). She takes Xanax, twice daily, as prescribed by Dr. Gupta; she has not seen a mental health professional (Tr. 48-50).

Every day, Plaintiff lies down on the couch with a heating pad placed at her back (Tr. 53). Every night, she wakes up because of back pain and takes her medication – she does not sleep very well (Tr. 53-54). Sitting triggers her pain (Tr. 52). Plaintiff could not do a job that allowed for an at will sit or stand option because she needs to lie down at least once or twice a day to nap – her medication makes her dizzy or tired (Tr. 52-53).

Plaintiff lives in a house with her two children, ages 10 and 17 (Tr. 42). She handles her own personal care; takes care of her children (who help her out a lot); makes some meals; washes clothes and cleans; drives; and, uses a computer (Tr. 50-51). Her brother-in-law helps her with the yard work (Tr. 51). Plaintiff gets along with her family and friends, and has no problems with her neighbors (Tr. 52).

### 2.      Vocational Expert

The ALJ asked a vocational expert ("VE") to assume a hypothetical individual of Plaintiff's age, education, and past work experience, who could lift no more than ten pounds; repetitively lift less than ten pounds; stand and walk intermittently during an eight hour work day for at least two of eight hours; sit for at least six of eight hours, but would need the ability to alternate between sitting and standing at will; and, only occasionally climb stairs, balance items while standing and walking, stoop, kneel, crouch, or crawl (Tr. 57).

The VE testified that such an individual could not perform Plaintiff's past relevant work (*Id.*). But, the individual could perform other jobs – sedentary and unskilled – in the national and regional economy such as: receptionist clerk; inspector; and packer, sorter (Tr. 57-58). The VE explained that a typical employer for such jobs would tolerate two 15 minute breaks, and a 30

minute lunch break; any additional breaks would preclude competitive work (Tr. 58). The VE added that any more than one absence per month would also be work preclusive (Tr. 58-59).

### D. Plaintiff's Claims of Error[6]

#### 1. Plaintiff's Credibility[7]

Plaintiff argues that the ALJ erred in evaluating Plaintiff's subjective complaints of disabling symptoms. This Magistrate Judge disagrees.

The Sixth Circuit has recently instructed ALJs on how to assess a claimant's credibility:

Credibility determinations regarding the applicant's subjective complaints of pain rest with the ALJ and are afforded great weight and deference as long as they are supported by substantial evidence. In assessing an individual's credibility, the ALJ must [first] determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged . . . . Next, the ALJ must evaluate the intensity, persistence, and functional limitations of the symptoms by considering objective medical evidence, as well as: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3)

---

[6] Plaintiff implies that the ALJ erred in his application of the treating source rule; she refers to SSR 96–8, which states that an RFC must "always consider and address medical source opinions," alongside 20 C.F.R. § 404.1527(d)(2), and emphasizes the proper weight to be given to treating source opinions (Dkt. No. 9 at pp. 8-9 (CM/ECF)). But, Plaintiff fails to substantiate this argument. Accordingly, this Magistrate Judge deems it waived. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones."). Plaintiff also suggests that the ALJ erred in his hypothetical question to the VE because he erred in his credibility determination (Dkt. No. 9 at pp. 9-10 (CM/ECF)). As discussed below, this Magistrate Judge finds no error in the ALJ's credibility determination and need not address the VE's testimony. *See Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir.1993) (the hypothetical question need not incorporate limitations the ALJ does not find credible).

[7] This Magistrate Judge acknowledges Defendant's position that Plaintiff fails to substantiate *any* argument at all (Dkt. No. 12 at pp. 8-11(CM/ECF)). In large part, this Magistrate Judge agrees: Plaintiff's arguments are unclear or unsubstantiated, and – to the extent that Plaintiff's arguments *are* decipherable – her brief consists largely of the same explanations of arguably relevant authority that he uses indiscriminately time and time again in filings with this Court. Still, a full discussion of Plaintiff's credibility argument is appropriate.

> precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions.

*Johnson v. Comm'r of Soc. Sec.*, ––– F. App'x ––––, 2013 WL 5613535, at *8 (6th Cir. Oct.15, 2013) (internal citations and quotations omitted). The ALJ is not required to address every factor; he need only identify specific reasons for his credibility determination – supported by evidence in the record – and clearly state the weight he gave to Plaintiff's statements and the reasons for that weight. *Potter v. Colvin*, No. 3:12–CV–202, 2013 WL 4857731, at *13 (E.D.Tenn. Sept.11, 2013) (citing SSR 96–7p, 1996 WL 374186, at *2 (1996); *Tell v. Comm'r of Soc. Sec.*, No. 11–15071, 2012 WL 3679138, at *11 (E.D.Mich. July 13, 2012)). Furthermore, "[c]redibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ." *Strevy v. Comm'r of Soc. Sec.*, No. 1:12–cv–634, 2013 WL 54472803, at *8 (W.D.Mich. Sept. 30, 2013) (citing *Gooch v. Sec'y of HHS*, 833 F.2d 589, 592 (6th Cir.1987)). This Magistrate Judge finds the ALJ provided sufficient reasons for rejecting Plaintiff's claims of disabling symptoms.

The ALJ found that Plaintiff had medically determinable impairments that could reasonably be expected to cause her alleged symptoms (Tr. 23). However, in his evaluation of Plaintiff's subjective complaints, the ALJ did not find her statements concerning the intensity, persistence, and limiting effects of her condition fully credible (*Id.*).

Plaintiff takes particular issue with the ALJ's evaluation of her reported need to rest throughout the day. During the hearing, Plaintiff suggested that fatigue and dizziness – side

effects from her medication – were the only reasons she could not do sedentary work (Tr. 23).[8] The ALJ noted this in his decision, and explained that "if it is only medication side effect[s] that would prevent [Plaintiff] from doing such a job, I believe that [her] medication cycle and schedule could be changed to accommodate her need for medication and could eliminate such medication side effect[s]" (*Id.*). Plaintiff does not contest the ALJ's reasoning: she does not, for example, explain why she could not change the timing of her medication regimen; nor does she point to *any* evidence of record that would support a need for such rest periods.

Moreover, the ALJ clearly stated other reasons for his credibility determination. He emphasized a lack of evidence supportive of disabling symptoms, and provided examples from

---

[8] The pertinent exchange went as follows:

Q: [I know that your previous jobs] require a lot of standing and walking. But there are jobs in the American economy that are primarily seated, involve minimal lifting, and give you the opportunity to stand. Can you do that work?

A: Pardon me?

Q: Can you, can you do that work?

A: Sitting actually triggers worse so - -

Q: But this job would give you the opportunity to stand. So if you didn't like sitting at that particular moment, you could stand at your option. Would you have a problem with that?

A: Well, I, I do lay [sic] down and take a nap at least once or twice a day.

Q: Okay. Now I'm going to tell you that all of us like to lie down and take a nap, that includes me. Is this like medically necessary for you, can it be accommodated outside of a work schedule?

A: But it's not because I want to lay [sic] down and take a nap. You know, the medicine either makes me dizzy or it makes me tired. So it's not because I want to be taking a nap.

(Tr. 52-53).

his evaluation of Plaintiff's medical records. For example, in July of 2009, Suresh Gupta, M.D. found that Plaintiff could lift, push, or pull up to 25 pounds; and, in February of 2011, Dr. Gupta reviewed Plaintiff's pain and anxiety medications and instructed her to return months later in the year – September or December of 2011 – unless she had any worsening of symptoms or concerns (*Id.*). The ALJ explained that such a directive – which is typical of Dr. Gupta's treatment notes – demonstrated that Plaintiff's condition was stable and did not require intensive or continuous medical care (*Id.*).

Plaintiff also suggests that the ALJ erred in his credibility finding, because, as she testified, her ability to perform certain daily activities – taking care of her children and doing small house chores – does not equate to an ability to perform sedentary work on a sustained basis (Dkt. No. 9 at p. 10 (CM/ECF)). Plaintiff does not elaborate further: she points to no limitations in her activities of daily living that the ALJ overlooked. Furthermore, the ALJ did not mention these aspects of her testimony in his decision: he only expressly mentioned the rest pattern that she takes issue with on appeal – "I do not believe that [Plaintiff]'s rest pattern is medically necessary or that it could not be accommodated in a regular day or week around a normal 8-hour workday or 40-hour workweek [sic]" (Tr. 23).

This Magistrate Judge finds substantial evidence supports the ALJ's evaluation of Plaintiff's credibility. His decision should not be disturbed on appeal.

## IV. CONCLUSION

Because substantial evidence supports the Administrative Law Judge's ("ALJ") decision, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Sec'y of HHS,* 932 F.2d 505 (6th Cir.1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS,* 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. *See* Fed.R.Civ.P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

s/Mark A. Randon<br>
Mark A. Randon<br>
United States Magistrate Judge

Dated:  December 17, 2013

-13-

*<u>Certificate of Service</u>*

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, December 17, 2013, by electronic and/or ordinary mail.*

*<u>s/Eddrey Butts</u>*
*Case Manager for Magistrate Judge Mark A. Randon*

2:13-cv-10685-RHC-MAR Doc # 13 Filed 12/17/13 Pg 13 of 13 Pg ID 370

-13-